UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.　　　　　　　　　　　　　　　　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　　　10-CR-239S (5)
DeMARIO STEWART,

                     Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant DeMario Stewart's pro se Motion for Compassionate Release, which the government opposes.[1] See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Stewart's motion is denied.

## II. BACKGROUND

On November 10, 2015, Stewart appeared before this Court and pleaded guilty to a charge of racketeering conspiracy involving murder, in violation of 18 U.S.C. § 1962 (d). (Docket Nos. 699, 705.) Four months later, on March 10, 2016, this Court sentenced Stewart to 216 months' imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs. (Docket Nos. 748, 753.) Stewart is presently serving his sentence at FCI Fort Dix, with a release date of April 10, 2026. (Sentence Computation Sheet, Docket No. 865, p. 24.)

On November 16, 2020, Stewart filed a pro se motion for compassionate release

---

[1] Stewart also requests appointment of counsel. (Motion for Compassionate Release, Docket No. 862, p. 1.) There is, however, no right to counsel for collateral attacks on a conviction or sentence, such as a motion for compassionate release. See Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987). Moreover, Stewart has failed to demonstrate that the interests of justice require the appointment of counsel, for example, that he has a reasonable likelihood of succeeding on the merits. See Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1985). Stewart's request for counsel is therefore denied.

1

under 18 U.S.C. § 3582 (c)(1)(A)(i).  (Docket No. 862.)  He contends that release is warranted because he is at heightened risk of severe illness from COVID-19 due to his medical condition (obesity) and because FCI Fort Dix has not effectively combatted COVID-19.  The government opposed Stewart's motion on December 7, 2020.  (Docket No. 864.)  Briefing concluded on January 4, 2021, with the filing of Stewart's reply, at which time this Court took Stewart's motion under advisement without oral argument. (Docket No. 865.)  Stewart thereafter file a Motion to Amend/Supplement his submissions with additional information about the circumstances at FCI Fort Dix on January 15, 2021. (Docket No. 866.)  That motion will be granted, and the record should reflect that this Court has considered the supplemental information in reaching its decision below.

### III. DISCUSSION

**A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

2

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of

imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons"

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

examples.  The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4]  Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited January 26, 2021)). But this Program Statement does not constrain this Court's consideration of what qualifies as extraordinary and compelling reasons for compassionate release.  As the Second Circuit recently held, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  United States v. Brooker, 976 F. 3d 228, 234-37 (2d Cir. 2020); see also United States v.

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 448 F. Supp. 3d at 186.

**B.  Stewart's Motion for Compassionate Release**

**1.  Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received

---

Marks, 455 F. Supp. 3d 17, 22-25 (W.D.N.Y. 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

6

the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 454 F. Supp. 3d 217, 220-223 (W.D.N.Y. 2020); accord United States v. Montanez, 458 F. Supp. 3d 146, 149-160 (W.D.N.Y. 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Stewart submitted his request for compassionate release to the warden of FCI Fort Dix on October 19, 2020.  (Motion for Compassionate Release, p. 6.)  The warden reportedly failed to respond.  Thirty days having lapsed since October 19, 2020, this Court finds that Stewart has satisfied the statutory exhaustion requirement, and the government concedes as much.  (See Memorandum of Law, Docket No. 864, p. 11 n.4.)

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Stewart has served 122 months of his 216-month sentence.  He is 32 years old and claims to suffer from obesity, which he argues makes him highly susceptible to severe illness from COVID-19.  Accepting Stewart's representation that he is 6'0" and 237 lbs.,[5] he has a body mass index of 32.1 and therefore qualifies as obese according to the Centers for Disease Control and Prevention ("CDC").[6]  (Reply Memorandum, Docket No. 865, p. 6.)    If released, Stewart plans to seek employment and live in his family home in

---

[5] At sentencing in March 2016, Stewart was 6'0" and 208 lbs.  (Presentence Investigation Report, Docket No. 750, p. 2.)

[6] https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited January 26, 2021).

Buffalo, N.Y.  (See id. p. 11.)

Having thoroughly reviewed the record, this Court first finds that Stewart's obesity does not constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13.  The condition is not a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor is it a serious condition, impairment, or age-related deterioration that substantially diminishes Stewart's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii).  See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).  Moreover, Stewart has not demonstrated that his obesity requires any sort of specialized care or care that the Bureau of Prisons is unable to provide.

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Stewart argues that his obesity makes him highly susceptible to severe illness from COVID-19. See United States v. Resnick, 451 F. Supp. 3d 262, 270 (S.D.N.Y. 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

COVID-19 is the sweeping, potentially deadly disease at the center of an ongoing worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  See Proclamation No. 9994, 85 Fed. Reg. 15,337-38 (March 13, 2020).  The CDC has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness

8

from COVID-19.[7]  See Jones v. Wolf, 467 F. Supp. 3d 74, 87 (W.D.N.Y. 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), Down Syndrome, heart conditions (e.g., heart failure, coronary artery disease, cardiomyopathies), immunocompromised state from solid organ transplant, obesity (body mass index of 30-39.9), severe obesity (body mass index of 40 or greater), pregnancy, sickle cell disease, smoking, and Type 2 diabetes mellitus.[8]

Stewart is therefore correct.  With a body mass index of 32.1, the CDC deems him at high risk for severe illness from COVID-19.  Nonetheless, it is doubtful that, with no other risk factors, Stewart's increased susceptibility to serious illness from COVID-19 based on a body mass index of just over 30 constitutes an extraordinary and compelling reason for a sentence reduction.  See, e.g., United States v. Suarez, No. 16-cr-453 (RJS), 2020 WL 7646888, at *4 (S.D.N.Y. Dec. 23, 2020) (noting that despite change in CDC guidance, numerous courts have held that obesity based on a body mass index at the low end of the minimally qualifying range does not constitute extraordinary and compelling circumstances for relief); United States v. Gibson, 17-CR-657-1 (JS)(ARL), 2020 WL 7343802, at *4 (E.D.N.Y. Dec. 14, 2020) (finding certain well controlled high-risk conditions, including obesity, do not constitute extraordinary and compelling reasons for

---

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited January 26, 2021).

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited January 26, 2021).

release); United States v. Sturgis, 6:10-CR-6022-CJS-MWP-4, 2020 WL 7063359, at *5 (W.D.N.Y. Nov. 24, 2020) (finding that obese defendant housed at FCI Fort Dix did not "necessarily establish extraordinary and compelling reasons to reduce" his sentence).

In any event, given the CDC's inclusion of obesity in its high-risk category, this Court will assume that Stewart's condition significantly contributes to the showing necessary for compassionate release. See Suarez, 2020 WL 7646888, at *4 (assuming with skepticism that defendant with body mass index of 31 demonstrates extraordinary and compelling circumstances for relief).

Some courts have found that inclusion in the high-risk category alone is enough to constitute an extraordinary and compelling reason for a sentence reduction, see, e.g., United States v. Zukerman, 451 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2020) (collecting cases), but this Court has not. Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme. See United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the

disease"); United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[9] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[10] These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.

While indications are that adherence to this plan has generally served Bureau of Prisons facilities fairly well, FCI Fort Dix has lately struggled to contain the coronavirus. It recently had the most cases of any Bureau of Prisons facility, with 687 inmate and 29

---

[9] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited January 26, 2021).

[10] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited January 26, 2021).

11

staff cases, and it had been recognized as an uncontrolled hotspot for several weeks.[11] See United States v. Hancock, No. 3:12-cr-15 (VAB), 2021 WL 71451, at *6 (D. Conn. Jan. 8, 2021) (noting that FCI Fort Dix has "the most [positive cases] of any federal institution documented on the BOP's website"); United States v. Edison, No. 12-225 (DWF/FLN), 2021 WL 51031, at *2 (D. Minn. Jan. 6, 2021) (finding that FCI Fort Dix has "been unable to control the spread of the virus"); United States v. Brown, 6:13-CR-6006 EAW, 2021 WL 29168, at *1 (W.D.N.Y. Jan. 5, 2021) (finding that "conditions at FCI Fort Dix have taken a discouraging turn" and that "there is clearly an outbreak [of COVID-19] at FCI Fort Dix").  And there has also been some indication that FCI Fort Dix is unable to provide adequate medical care for those stricken with COVID-19.  See, e.g., United States v. Rodriguez, 16-cr-07 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) (noting that "[c]onditions at [FCI Fort Dix] appear to present serious risks both of spread of the virus and of inadequate medical care for those who have been infected"). Nonetheless, conditions at Fort Dix have now improved, with only 40 active inmate and 32 active staff cases as of this writing.[12]

Considering his obesity and the recent uncontrolled outbreak of COVID-19 at FCI Fort Dix, this Court finds that Stewart demonstrates more than just a general possibility that he could contract COVID-19.  First, he demonstrates a high-risk factor (obesity) that arguably places him among the most susceptible to the potentially lethal COVID-19 disease.  Second, he demonstrates incarceration in a facility where the BOP has very recently proven unable to effectively manage or guard against the virus.  This further

---

[11] See https://www.bop.gov/coronavirus/ (visited January 12, 2021).

[12] See https://www.bop.gov/coronavirus/ (last visited January 26, 2021).

12

increases Stewart's risk.  Accordingly, considering these factors in combination, this Court finds that Stewart has demonstrated extraordinary and compelling reasons warranting a sentence reduction.  See United States v. Tazewell, 07 Cr. 1035, 2021 WL 21980, at *2-4 (S.D.N.Y. Jan. 3, 2021) (finding that inmate with high-risk factors incarcerated at FCI Fort Dix established extraordinary and compelling reasons for compassionate release); United States v. Cassidy, 17-CR-116S, 2020 WL 2465078, at *7 (W.D.N.Y. May 13, 2020) (finding combination of high-risk factors and incarceration in a "hotbed" facility to constitute extraordinary and compelling reasons for sentence reduction).

But this finding alone does not compel release.  And here, the remaining considerations require denial of Stewart's motion.

### 3. Consideration of the § 3553 (a) Factors

Notwithstanding Stewart's demonstration of "extraordinary and compelling" reasons qualifying him for compassionate release, this Court finds that consideration of the § 3553 (a) factors outweighs those reasons, and that a reduction would severely undermine Stewart's original sentence.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 430-31.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).

Stewart is a drug-trafficker and murderer.  He was a member of the "Rounds Crew,"

a loosely knit enterprise engaged in racketeering activities, including large-scale distribution of marijuana and other controlled substances, in a defined territory in Buffalo, N.Y. (Presentence Investigation Report, Docket No. 750, ¶¶ 9-12.) The group was responsible for distributing at least 100 kilograms of marijuana during the timeframe charged in the indictment, and is thought to have distributed two pounds of marijuana per day—every day—between 2004 and 2009. (Id. ¶ 11.)

Stewart and other members of the Rounds Crew used intimidation and violence to ensure that no rival gangs or dealers encroached their territory. As part of that effort, Stewart shot and killed Brandon Haugabook on July 10, 2009, believing him to be a rival gang member responsible for previously stealing from the Rounds Crew. (Id. ¶¶ 28, 45, 48.) Stewart encountered Haugabook on the street that day and asked him where he was from. (Id. ¶ 45.) When Haugabook responded that he was from a street affiliated with a rival gang, Stewart drew a gun and shot him in the left arm and torso, killing him. (Id.)

For this wanton and serious criminal activity involving death, this Court imposed a 216-month sentence according to the parties' Rule 11 (c)(1)(C) agreement. With Stewart facing life imprisonment under the statute and an advisory guidelines range of 292-365 months, this was most certainly a fair, just, and reasonable sentence. A reduction to time served at this point, with Stewart having served little more than half his sentence, would severely undermine the original sentence. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing

disparities. Id.

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction. See Rodriguez, 2020 WL 7640539, at *4 (finding that although defendant demonstrated extraordinary and compelling reasons for sentence reduction given the outbreak of COVID-19 at FCI Fort Dix, compassionate release was not warranted because he "has served only about half his sentence for multiple acts that gravely imperiled members of the public").

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, this Court finds that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

Stewart was a member of a significant drug-trafficking enterprise that used violence to further its illegal activities. In addition to murdering Haugabook, Stewart shot at other rival gang members while in their territory and shot at a car he believed to be operated by rival gang members as he stood guard at a Rounds Crew drug house. (Presentence Investigation Report, ¶¶ 22, 30)  Stewart thus has a demonstrated history of violence that makes him a danger to the community if released.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release and a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Stewart's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Stewart's Motion for Compassionate Release (Docket No. 862) is DENIED.

FURTHER, that Stewart's Motion to Amend/Supplement his submissions (Docket No. 866) is GRANTED.

SO ORDERED.

Dated:   January 26, 2021
         Buffalo, New York

                                                          s/William M. Skretny
                                                          WILLIAM M. SKRETNY
                                                          United States District Judge